WM. H. VAN WAGENEN and ANTHONY YEOMAN *v.* MARY HOPPER, *et al.*

A subsequent mortgagee, whose mortgage was recorded, had notice, before taking his mortgage, of a prior unrecorded mortgage. *Held*, that the latter had priority.

The person who gave both mortgages, though made a party defendant, was held competent to prove that the subsequent mortgagee had notice of the prior mortgage.

This cause was decided at the December term, 1848.

Bill, filed May 14, 1847, by William H. Van Wagenen and Anthony Yeoman, against John Coe and others, to foreclose a mortgage, dated April 23, 1846, made by John Coe and Catharine his wife, to the complainants, on two lots in the bill discribed, one containing 73 14-100 acres, and the other, 14 37-100 acres, situated in the County of Passaic, to secure the sum of $822.87 ; which mortgage was acknowledged, on the day of its date, before Absalom B. Woodruff, a Master in Chancery, and was recorded the same day.

The bill states, that, on the 2d of February, 1846, the said John Coe and wife executed a mortgage of the same premises to William J. Ackerman, to secure $2,500 ; and that Ackerman, on the 4th day of the same month of February, assigned the last mentioned mortgage to the defendant, Albert Terhune.

That it appears by the records of the County of Passaic, that the said John Coe executed a mortgage on the same premises, or some part thereof, dated March 2, 1846, to the defendant Mary Hopper, to secure to her the payment of $50 a year ; but that the said mortgage, if executed on the day it bears date, was recorded subsequently to the execution and recording of the complainants' said mortgage, and that the complainants, at the time of the execution of the said mortgage to them, had no notice of the existence of the said mortgage to Mary Hopper ; and that they took their said mortgage for, and gave therefor a valuable consideration.

Mary Hopper, in her answer, admits the mortgage to Acker-man; and also the mortgage to the complainants, and that it was recorded as stated in the bill. And states, that, on the 2d of March, 1846, the said John Coe, by a bond under his hand and seal, duly made and executed, and bearing date the said 2d of March, 1846, became bound to her in $50 to be paid to her annually during her natural life, with a condition thereunder written, that whereas the said John Coe, in consideration of said Mary Hopper releasing her right of dower in a certain lot on the South side of Passaic street, in Paterson, of which she was tenant in dower in right of her deceased husband, Andrew G. Hopper ; and for the releasing of which the said John Coe, in and by the said bond, agreed to pay her $50 every year from the date of the said bond, during her life ; and for the doing of which the said John did covenant, promise and agree to pay her the said sum of $50 yearly and every year during her life, and at the end of each every year from the date of the said bond. And she further says, that the said John Coe, in order to secure the payment of the said bond, on the said 2d day of March, 1846, made and executed to her a certain mortgage, conditioned for the payment of the said sum of $50, to be paid to her yearly, and every year, and which said first year expired on the 2d day of March, 1847. And that the said John Coe, in and by the said mortgage, did grant, bargain, &c., to her, her heirs and assigns, all those lots, situate, &c., particularly described in the complainant's bill, and in the mortgage of the said Albert Ter-hune. And that the said mortgage was upon the condition that if the said John Coe, his executors, &c., should pay her the said sum of $50 yearly, according to the condition of the said bond, then, &c.

That the said indenture of mortgage was duly acknowledged on the 2d of March, 1846, before B. W. Vandervoort, Master in Chancery.

That John Coe, the mortgagor, married her daughter ; and that she, being a plain woman, did not immediately after taking said mortgage suppose it was necessary to have it recorded ; and reposing at that time full confidence in him, and supposing at

that time that he would not be disposed to take any undue advantage of her, his mother-in-law ; but that she has good grounds to believe, and therefore charges, that the complainants had knowledge that the said John had given to her the said mortgage to secure her as aforesaid.

The answer of Albert Terhune sets forth the mortgage given to Ackerman and assigned to him.

Replications were filed.

A decree *pro confesso* was taken against Coe and his wife, they having put in no answer.

In December, 1847, an order was taken on the part of Mary Hopper, in the usual form, for the examination of the defendant John Coe, as a witness for the defendant Mary Hopper, saving all just exceptions on her allegation that he was a material witness for the said Mary Hopper, and was not interested in the matters in question in the cause.

The examination of John Coe was objected to before the Master, on the ground that he is a defendant in the cause ; and on the ground that he is interested in favor of said Mary Hopper. Being sworn before the Master, and being shown the mortgage to Mary Hopper, he says he cannot state positively whether he signed the same or not, but says that he gave her a mortgage for $50 a year, but does not know whether this mortgage shown to him is the one ; nor does he recollect the date of it ; and he believes he gave her a bond at the same time. He cannot tell at what time he gave a mortgage to the complainants, but that he gave it subsequent to the execution of the mortgage to Mary Hopper. He says he had conversation with Van Wagenen, one of the complainants, the last of April or 1st of May, 1846, or thereabouts. That at that conversation, he told Van Wagenen that he had a house and lot in Passaic street, Paterson, which he wanted the complainants to take and release him from his lia-

bility to them, which Van Wagenen refused, on the ground that he did not want the property, but wanted the money. That Van Wagenen then asked him, whether he had any other property with which he could secure him. Witness told him he had no other property except his farm. Van Wagenen then asked him what he gave for it, and witness told him. Van Wagenen then asked how much incumbrance there was on it. Witness told him that when he bought he gave Albert Terhune a mortgage on it for $2,500. Witness also told him he had given his mother-in-law, Mary Hopper, a mortgage on it for the payment of $50 a year. Van Wagenen then asked what he had given her that mortgage for. Witness told him that he had bought her husband's property at Administrator's sale, and thought he had it clear; he thought so then and thinks so yet. Witness gave her this mortgage because she released her right of dower to the last mentioned property. Witness says, that Andrew Hopper was the name of her husband, and that the Administrators who made the said sale were William G. Hopper and the defendant Mary Hopper. Witness says, that the said Administrators, at the said Administrator's sale, guaranteed the said property free of all incumbrance, except to the amount of $650. At the same conversation Van Wagenen asked witness, whether the mortgages he had given were on record. Witness told him he did not know. The above conversation took place in the morning. Van Wagenen came up in the 8 o'clock car, and he and witness talked until about 2 o'clock. Witness had a further conversation with Van Wagenen in the after part of the day. He wanted witness to give him a mortgage for the whole amount witness owed them; that he was satisfied to take it. At this conversation Van Wagenen asked witness no further questions about the Mary Hopper mortgage. At this time witness and Van Wagenen agreed on the terms of payment. After this, on the same day or day after, Van Wagenen had a mortgage drawn up, and witness executed it; at which time Van Wagenen and A. B. Woodruff came to witness's house. The mortgage was read over, and Terhune's mortgage was mentioned in said Van Wagenen's mortgage; the other, to Mary Hopper,

was not. Witness told them he would not sign it unless they were both mentioned in it; so that there could be no trouble about it. Van Wagenen then showed witness a piece of paper to show that there was nothing on the property but Terhune's mortgage; that he (Van Wagenen) had been to the records, and that there was nothing on it but the Terhune mortgage. Witness then told him that he wanted him (Van Wagenen) to give to witness a piece of paper to show that the mortgage of Mary Hopper was given, or that else he might have trouble about it. Van Wagenen did not say anything in answer to this. Mr. Woodruff said that it would be an irregular way of doing business; unless witness signed the mortgage of his own free will it would be good for nothing. Witness and his wife signed it, and it ended there. He says that the mortgage given to the complainants and the one to Mary Hopper are on the same property. Being asked whether he did not state, distinctly, to Mr. Van Wagenen, at different times before the execution of the complainant's mortgage, that he had given the said mortgage to Mary Hopper, he says he did; that he remembers twice of telling Mr. Van Wagenen.

*Cross-examined.* At the first of said conversations with Van Wagenen no one was by when he told him about the Mary Hopper mortgage. He recollects distinctly that he told Van Wagenen that he had given Mary Hopper a bond and mortgage. At this time when he told Van Wagenen this, he and Van Wagenen were in the yard back of A. B. Woodruff's office. This was the first time witness spoke to him about Mary Hopper's and the Terhune mortgage. This was the first time witness spoke to him about the Mary Hopper mortgage. Van Wagenen then asked witness, there, if witness had no other property. Witness told him he had none but his farm. After this conversation he said nothing to Van Wagenen, nor Van Wagenen to him, until the time when the complainant's mortgage was executed, at witness's house, about the Mary Hopper mortgage. He does not remember that he stated at his house anything more about the Mary Hopper mortgage than he has already stated. When Van

Wagenen and he agreed upon the terms of payment they were in the yard back of Mr. Woodruff's office; and after dinner Van Wagenen said he would take the mortgage. There was no one by then. There was no one by at any time when he told Van Wagenen about the Mary Hopper mortgage, except at the execution of the complainant's mortgage. There was no one present at the execution of the complainant's mortgage, when he spoke to Van Wagenen about the Mary Hopper mortgage, but A. B. Woodruff. He has not told any person that the time he told Van Wagenen about the Mary Hopper mortgage was at the execution of the complainant's mortgage, at his house. The complainant's counsel asked him this question. Did you not tell me (A. B. Woodruff) that the time you told Van Wagenen about the Mary Hopper mortgage was at the execution of the complainant's mortgage at your house, and that your mother-in-law and her two sons were in the next room and heard you tell him? He answers no; and says that he does not recollect any such conversation; that he never stated anything like it to A. B. Woodruff or any body else. That he does not recollect of asking A. B. Woodruff what would be the effect if Mary Hopper should prove that complainants had notice of her mortgage at the time they took their's. That he never told A. B. Woodruff, or any other person, that Mary Hopper could prove that the complainants had notice of her mortgage at the time they took their's, for that her two sons heard him tell Van Wagenen. At the time complainant's mortgage was executed, the property in Passaic street, which he offered to sell to complainants for what he owed them, was worth fully what he owed them, over incumbrances. At the time he gave the Mary Hopper mortgage there was another mortgage given up by her to him, on property on the corner of Paterson and Van Houten streets. This mortgage so given up by her to him was the whole consideration for the present mortgage to Mary Hopper.

*Benjamin W. Vandervoort*, sworn on the part of Mary Hopper, says he is a witness to the bond and mortgage of Mary Hopper; and that he believes they were executed on the day

and year of their date; and that the mortgage was acknowledged before him, as a Master in Chancery. (The acknowledgment of this mortgage is dated March 2, 1846.)

*Absalom B. Woodruff,* sworn for the complainants, says, that, previous to the December term, 1845, of the Passaic Circuit Court, there were three notes in his hands for collection, payable to the complainants, made by John Coe. Two of them became due before or during that term. Two suits were commenced on these; one on each; returnable to said term. A summons was issued on the 3d note, returnable to March term, 1846. Interlocutory judgments were taken in the first two suits at the March term, 1846. Some time that spring, and previous to the giving of the complainant's mortgage, Coe went to New York, as witness was afterwards informed by Coe and Van Wagenen. After his return from New York, Van Wagenen came to Paterson to make some arrangement of the suits in Court; and he and Coe came to witness's office, and were there an hour or two; during which time various propositions for arranging the suits were made and discussed. Finally it was agreed between them, that Coe should give and complainants receive a mortgage on the farm on which Coe then lived, to secure the payment of the said three notes and the costs of the three suits. That mortgage was taken by the complainants by the advice of witness, who thought it a better security than any other that Coe had offered; in which opinion Van Wagenen agreed with witness. While Coe and Van Wagenen were talking of the time at which the money to be secured by the mortgage should be made payable, a person came into witness's office. Coe wanted eight years to pay the money; which Van Wagenen was unwilling to give. The person coming in while the parties were discussing this matter, and Coe having expressed a wish that the transaction should be kept private, he and Van Wagenen went out into the yard in the rear of deponent's office. They were there but a very few minutes and came in, the person who had been with witness having gone out; and when they came in, witness thinks they had agreed definitely on the time of payment as stated in the

mortgage. Previous to executing the mortgage witness went to the office of the Clerk of Passaic and searched the records, and found no incumbrance of any kind on Coe's farm, of record, except a mortgage to W. I. Ackerman, which witness thinks was then on record. Witness thinks there were some old uncanceled mortgages, which he presumes were paid; but they were all dated prior to the conveyance to Coe. Ackerman conveyed the property to Coe by deed dated February 2d, 1846, with covenants of warranty against incumbrances. Witness supposed Ackerman able to make his covenants good. The consideration money in the deed from Ackerman to Coe is $3,900; which is the price Coe said he paid Ackerman for the property. Van Wagenen and witness thought the property would bring sufficient to pay Ackerman and the debt of the complainant. The complainants paid witness the costs of the three suits, and took a bond and mortgage to secure the payment of the amount of the three notes and these costs. The complainant's bond was signed by Coe in witness's presence; and he, at the same time, signed his name as a witness thereto; also a mortgage, of the same date, between the same parties, given to secure the moneys mentioned in the said bond. Coe signed the mortgage first. He signed it without asking or ascertaining the items which made up the amount therein mentioned. After the mortgage was signed by Coe witness asked him where his wife was, and told him she must sign it too. Coe said she was in the kitchen. Witness rose to go to the kitchen door to ask her to come in. Coe said, " Don't you go, the old woman (meaning Mrs. Mary Hopper) is there, and she'll be as mad as thunder if she finds out this." Coe himself went to the door and his wife came and signed the mortgage. When witness proceeded to take the acknowledgment of the mortgage, and asked Coe whether he signed, sealed and delivered it as his voluntary act and deed, Coe answered that he did not ; that he would not have done it if it had not been for the suits. Witness said, that is no regular way of doing business, he could not take such an acknowledgment as that, and told him that unless he signed it as his voluntary act and deed it was no mortgage, and the complainants could not

take it. Coe then made the acknowledgment in the form certified on the mortgage; as did his wife also. The mortgage was executed and acknowledged at Coe's house. The writing on the margin of the second page of the mortgage was not done until after witness and Van Wagenen got to Coe's house on the day of the signing.

Previous to the examination of John Coe in this suit, he saw witness on the piazza of Congress Hall, and asked witness what would be the effect if Mary Hopper could prove that Van Wagenen & Yeoman had notice of her mortgage at the time they took their mortgage. Witness told him she could not prove it. That they had no notice of it. He said they had such notice, and she (Mrs. Hopper) could prove it; that he, Coe, gave Van Wagenen notice. Witness asked either when or where he gave him notice. Coe answered that he told him at his, Coe's house, at the time the mortgage was given to the complainants. Witness replied to Coe that he did not do any such thing. Coe replied, " Well, she can prove it, for she and her two sons were in the next room and heard me tell him." Witness answered, " Well, then she can prove a lie, that is all I have to say." Coe replied, that she should not get any of her mortgage if he could help it.

*Cross-examined.* He is solicitor of the complainants in this suit. The complainant Yeoman was not present and took no part, personally, in the transaction when the mortgage was given. The conversation in witness's office between Coe and Van Wagenen was in the forenoon of the day of the date of the mortgage. Witness cannot specify the exact time Coe and Van Wagenen were in the yard in rear of his office on that day; but thinks it was a short time; not many minutes. Can't say whether they were there ten, fifteen or twenty minutes. His impression is that all matters were arranged before they went out into the yard, except the time of payment. Witness did not, during this transaction, state to the parties that he was acting in the matter for both; though he may have said he would do nothing but what was right between them. Witness is not certain as to the time, but thinks it was four to six weeks before Coe's exam-

ination in this suit, that the conversation on the piazza of Congress Hall took place. This was not the first witness had heard. that Mary Hopper claimed priority over the complainant's mortgage. Thinks she had prior to that time filed her answer in this suit, and that the first knowledge he had of it was derived from the answer.

Witness's impression is, that, at the time of the execution of complainant's mortgage at Coe's house, he said he had promised to give Mrs. Hopper a mortgage; and it is his impression that Coe gave that as a reason why she would be angry if she knew of the giving of complainant's mortgage. If this was said at that time, it was only in connection with Coe's remark that she would be angry. Witness is not positive he gave any reason; and does not know but that he, witness, derived that impression from the remark itself that she would be angry. Witness does not remember that Coe said he would not execute complainant's mortgage unless it was stated in it that he had given a mortgage to Mrs. Hopper. Does not remember saying to Coe that he hurried down to the Clerk's office to get complainant's mortgage on record before Mrs. Hopper could get her's there; don't think he could have said any such thing as that. Witness recollects that they hurried to the office under an apprehension that there might be somebody in the kitchen prepared to execute a mortgage and hurry it on record before the complainant's mortgage. Witness had this suspicion because Coe stopped him when he started to call Mrs. Coe. Witness does not know that there was a quarrel between Coe and Mrs. Hopper. Coe has talked with witness as if he was angry with her. Complainant's mortgage was executed in a room which, as witness supposed, joined the kitchen. Don't remember whether they entered this room through the kitchen; it may be that they did. Witness has no recollection of anything besides what is here stated, that took place that day, that can have any bearing on the matters in controversy in this suit. He can't state positively, but thinks, that when they left Coe's house that day they did not go out through the kitchen.

In addition to the circumstance of Coe's stopping him when he

started to call Mrs. Coe, witness's suspicions were excited by the circumstance of Coe's signing the mortgage without inquiring into the particulars which made up the amount. At the time of entering Coe's house witness does not recollect that any bill of particulars was handed to Coe by Van Wagenen; though there might have been. If there were any, does not think it had all the particulars in it.

Depositions impeaching, and in support of John Coe's character for truth and veracity were read.

*A. B. Woodruff*, at a subsequent day, (about three weeks after his first examination,) and after all the other testimony had been taken, offering to testify further in the matter, in explanation of a statement made in his former examination, says: that by stating in his former cross-examination, that at the time of entering Coe's house he, the witness, did not recollect that any bill of particulars was handed to Coe by Van Wagenen, though there might have been such a bill of particulars handed to Coe and the circumstances not recollected by him, the witness. Witness thinks, if such statement had been handed to Coe, he would have seen it; for witness and Van Wagenen were together during the whole time they were at Coe's house. At the time the mortgage was executed, Van Wagenen sat at one end of the table and witness at the other.

*A. B. Woodruff* and *A. S. Pennington* for the complainants.

*B. W. Vandervoort* and *W. Pennington* for the defendants.

THE CHANCELLOR. The question involved is a single question of fact, whether the complainants, when they took their mortgage, had notice that Coe had given a prior mortgage to the defendant Mary Hopper.

That Coe had given Mrs. Hopper a prior mortgage is proved by the production of that mortgage and the testimony of the subscribing witness to it, who, being a Master in Chancery, also

took the acknowledgment of the execution of it. This mortgage and the acknowledgment are dated March 2d, 1846. The mortgage to the complainants is dated April 23d, 1846. The question is, had the complainant's notice of this prior mortgage when they took theirs?

John Coe, the man who gave both these mortgages, and who is, clearly, as I apprehend, a competent witness for the purpose, testifies distinctly that he informed Van Wagenen, one of the complainants, before he executed the complainant's mortgage, that he had given a mortgage on the same premises to Mrs. Hopper. An effort has been made, on the part of the complainants, to overcome this testimony by calling witnesses to impeach the character of Coe for truth. I do not think it necessary to examine particularly the nature and amount of the testimony produced by the respective parties against and in support of Coe's character for truth. I will only say that, in view of the testimony in support of his veracity, I think it would be going very far to deny to the party whose rights depend on his evidence the benefit of it upon testimony of the nature of the impeaching testimony offered in this case.

But I think the cause may be satisfactorily decided by a careful examination and comparison of the testimony of Coe, on the part of Mrs. Hopper, and the testimony of A. B. Woodruff, on the part of the complainants.

Coe testifies, that, in the morning of the day on which the mortgage to the complainants was given, he told Van Wagenen he had a house and lot in Passaic street, Paterson, which he wanted the complainant to take, and release him from his liability to them; which Van Wagenen declined. That Van Wagenen then asked him whether he had any other property with which to secure him. That he answered, no other except his farm. That Van Wagenen then asked him how much he gave for it, and he told him. That Van Wagenen then asked him how much it was incumbered for, and witness told him he had given a mortgage on it to Terhune, from whom he bought it, for $2,500, and a mortgage to Mrs. Hopper for the payment of $50 a year. That Van Wagenen asked him whether the mortgages

he had given were recorded, and that he told Van Wagenen he did not know. That he had a further conversation with Van Wagenen in the after part of the day. Van Wagenen wanted him to give a mortgage for the whole amount he owed the complainants; that he was satisfied to take it. After this, Van Wagenen had a mortgage drawn up; and Van Wagenen and A. B. Woodruff came to his house. That the mortgage was read over, and the Terhune mortgage was mentioned in it, but the mortgage to Mrs. Hopper was not. That he told them he would not sign it unless they were both mentioned in it. That Van Wagenen then showed him a paper, to show that there was nothing on record but the Terhune mortgage. That he then told Van Wagenen, that he wanted Van Wagenen to give him a paper to show that the Mary Hopper mortgage was given, or he might have trouble about it. That Van Wagenen said nothing in answer to this. That Woodruff said it would be an irregular way of doing business; unless he signed the mortgage of his own free will it would be good for nothing. That the mortgage was signed and it ended there.

Mr. Woodruff, examined for the complainants, says, he went with Van Wagenen to Coe's house, and was with them there during all the time until the mortgage was executed. He says nothing in contradiction of Coe's statement as to what passed there in reference to the Mary Hopper mortgage. This is certainly remarkable if nothing was said by Coe showing that he had given a mortgage to Mrs. Hopper. And further, Mr. Woodruff nowhere says in his testimony, that he had no notice of the mortgage to Mary Hopper. If he had no knowledge or notice of it, I cannot imagine that he would have failed to say so. This, in view of the testimony of Coe, is, I think, conclusive. Woodruff was acting for the conplainants; and if he had notice it was notice to them. The same reasoning proves that there is no good reason for doubting Coe's statement that Van Wagenen had notice. It was certainly in the power of Mr. Woodruff, if nothing passed in reference to the Mary Hopper mortgage while he and Van Wagenen were at Coe's house, to have given a full and

direct contradiction to Coe's statements.    His failure to contradict them, and his failure to say that he had no notice, decides the question, clearly, for the defendant Mary Hopper.    Her mortgage is entitled to priority over that of the complainants.

Decree accordingly.